UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 08-167 (DWF/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| William Patrick Flannigan, | |
| Defendant. | |

---

Michael A. Dees, Assistant United States Attorney, for the Government.
Manny K. Atwal for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on July 9, 2008 on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#16] and Defendant's Motion to Suppress Statements, Admissions and Answers [#17]. At the hearing, the Court received testimony from St. Paul Police Officer Adam Siegfried. Neither party submitted any exhibits during the course of the hearing. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's motions [#16 and #17] be denied.

**I.      FINDINGS OF FACT**

Adam Siegfried has been a member of the St. Paul Police Department for over eight years. For the last five years, he has worked in the Western District of St. Paul as a patrol and field training officer. Field training officers train new recruits. On the night of September 8 and

the early hours of September 9, Officer Siegfried was working the 10:00 p.m. to 8:00 a.m. shift in his capacity as a field training officer. He was working with a recruit, Jason Whitney, who was in his fourth phase of training. Officer Whitney was driving the marked squad car and Officer Siegfried was dressed in plain clothes and was sitting the passenger seat. Siegfried testified that around 12:30 p.m., he and Whitney observed a vehicle speeding near the intersection of Syndicate Avenue and Lafond Avenue in the Western District of St. Paul. Officer Siegfried stated that he observed two occupants in the car and that it was traveling approximately 60 miles per hour in a 30 mile per hour zone. When they spotted the speeding car, Officer Whitney did not turn on the squad's lights immediately but rather sped up in an attempt to move closer to the car. Officer Siegfried testified that when the car reached Dunlop Avenue, it turned left but failed to signal the turn. From Dunlop, it turned east onto Blair Avenue. When it reached Lexington Avenue, the vehicle slowed down but did not come to a complete stop at the stop sign. He testified that they could not get close enough to the car to run its license plates while they were driving behind it.

After the officers observed the car run the second stop sign, Officer Whitney turned on the squad car lights. Once they pulled over the car, Officer Siegfried shined a spotlight attached to the squad car into the car. Officer Siegfried observed the driver making furtive movements with his right arm, as if he were handing something off to the passenger or pushing something away from him. Officer Siegfried testified that he has pulled over hundreds of cars in his five years as a patrol officer and he has observed between 100 and 200 times drivers make furtive movements upon being pulled over. In his training and experience, drivers generally make furtive gestures when they want to conceal something they do not want the officers to see. When

Officer Siegfried observed the furtive gestures, he told Officer Whitney that he could see movement in the car. Officer Whitney approached the driver's side of the vehicle while Officer Siegfried approached the passenger side.

Officer Siegfried testified that when he approached the passenger side window, he was carrying a flashlight which he shined into the car and that he observed about two grams of marijuana loose on the Defendant's lap. Officer Siegfried knew that the leafy substance was marijuana because, in his training and experience, he has seen the substance hundreds of times. After the officers observed the marijuana, Officer Whitney asked the driver - the Defendant - to exit the car and detained the Defendant in the back seat of the squad car. Officer Siegfried testified that they put the Defendant in the back of the squad car because the vehicle had been speeding, because he observed the Defendant's furtive movements when first pulled over and because he observed marijuana on the Defendant's lap when he approached the car.

Officer Siegfried testified that he remained standing in front of the passenger window while Officer Whitney brought the Defendant back to the squad car. While the passenger was still seated in the car, Officer Siegfried noticed that she was pulling down on the front of her shirt. He asked her to step out of the car. During this time, Officer Siegfried discovered that the passenger was concealing a handgun under her shirt. He testified that they called for backup after he discovered the gun.

## II.    CONCLUSIONS OF LAW

### A.    Defendant's Motion to Suppress Evidence as a Result of Search and Seizure must be Denied [#16].

The Defendant seeks suppression of the gun discovered by police during the traffic stop. At the hearing, Defendant did not make any specific arguments as to why the gun should be

suppressed. After reviewing the testimony and applicable law, the Court concludes that the officers in this case had probable cause to make the traffic stop and to seize the gun.

Law enforcement officers have the authority to stop a moving vehicle when they have probable cause to believe that the vehicle is being operated in violation of law. *Whren v. United States*, 517 U.S. 806, 811-13 (1996). Here, Officer Siegfried had probable cause to make a traffic stop because he and Officer Whitney observed the vehicle traveling at 60 miles per hour in a 30 mile per hour zone. He also observed that the driver failed to signal his left turn onto Dunlap Avenue and ran a stop sign at the intersection of Blair and Lexington Avenues. Each of these violations constitutes probable cause to make a traffic stop.

After making the traffic stop, the officers lawfully discovered the gun. A police officer may, as a matter of course, order the passenger of a lawfully stopped vehicle to exit the car. *Maryland v. Wilson*, 519 U.S. 408, 410 (1997). In this case, Officer Siegfried testified that he asked the passenger of the vehicle to step out of the car and in the process of her doing so, he observed a gun fall out from under her shirt.

The gun was lawfully seized under the plain view exception to the warrant requirement. Officers may seize evidence in plain view without a warrant if: (1) police are lawfully in a position from which they view an object; (2) its incriminating character is immediately apparent; and (3) the officers have a lawful right of access to the object. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

Here, Officer Siegfried was in a lawful position from which to view the object because he lawfully pulled over the car and ordered the passenger to step out of the vehicle. In the process of the passenger stepping out of the vehicle, he discovered the gun.

As to prong two, the object's incriminating character was immediately apparent. An object's incriminating character is immediately apparent if there is "probable cause to associate the property [seized] with criminal activity." *United States v. Wayne*, 903 F.2d 1188, 1196 (8th Cir. 1990) (quoting *Texas v. Brown*, 460 U.S. 730, 741-42 (1983). The probable cause standard was explained by the Supreme Court in *Brown*:

> [P]robable clause is a flexible, common-sense standard. It merely requires that the facts available to an officer would "warrant a man of reasonable caution and belief," that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.

460 U.S. at 742 (citations omitted). In *Hughes*, the Eight Circuit concluded that law enforcement officers had probable cause to seize a gun found in the vicinity of illegal drugs. 940 F.2d at 1126. In that case, officers executed a search warrant on the defendant's home to recover stolen property. *Id*. In the process of executing a search warrant, the officers discovered cocaine in a coat pocket and a handgun under the bed. *Id*. The defendant argued that the gun and the cocaine should be suppressed because the search exceeded the objective of the warrant. *Id*. The court however concluded that the drugs and the gun could be seized under the plain view exception. *Id*. at 1126-27. In addressing the second prong of the plain view analysis, the Court reasoned that "the incriminatory nature of the gun and cocaine was immediately apparent. *Id*. at 1127. Cocaine is contraband, and the officers had probable cause to associate the gun with criminal activity." *Id*.

Similarly, in this case, the officers had probable cause to associate the gun with criminal activity. They observed the defendant's vehicle driving 60 miles per hour in a 30 mile per hour zone. When they pulled the vehicle over and shined a light inside, Officer Siegfried observed

the defendant making furtive movements, behavior which in the officer's training and experience suggested that the driver was trying to conceal something. When the officers approached the vehicle, Officer Siegfried observed marijuana on the defendant's lap. After Officer Whitney brought the defendant back to the squad car, Siegfried noticed that the passenger was pulling on her shirt. When he asked her to step out of the car, the gun dropped out from under her shirt. The presence of drugs in addition to the occupants' suspicious behavior and the haphazard manner in which the passenger was concealing the gun is sufficient to establish probable cause that the gun was associated with criminal activity.

As to prong three, the officer had a lawful right of access to the gun. The officer was not trespassing or making an illegal stop; he was making a lawful traffic stop and discovered the gun when ordering the passenger to step out of the vehicle.[1]

Because the officer seized the gun in plain view while making a lawful traffic stop, the Defendant's motion to suppress must be denied.

### B. Defendant's Motion to Suppress Statements, Admissions and Answers [#17] must be granted..

At the hearing on the motion, the government represented that it did not intend to use at trial any statement the defendant made. Accordingly, the the Court recommends that this motion be granted.

---

[1] The Supreme Court first adopted the plain view test in *Coolidge*, 403 U.S. at 470-73, where the Court concluded in part that the officers in the case did not have a lawful right of access to seize the defendant's vehicles. It concluded that the seizure of the vehicles was not covered by the plain view exception because the officers trespassed on the defendant's property to seize the vehicles and there were no exigent circumstances justifying the trespass.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtaioned as a Result of Search and Seizure [#16] be **DENIED**; and Defendant's Motion to Suppress Statements, Admissions and Answers [#17] be **GRANTED.**


DATED: July 23, 2008                              s/ *Franklin L. Noel*
                                                  FRANKLIN L. NOEL
                                                  United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 8, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **August 8, 2008,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.